# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1433

ROBERT E. SCHMIDT,

*Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03 C 281—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED SEPTEMBER 22, 2004—DECIDED JANUARY 14, 2005

———————

Before COFFEY, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Appellant Robert Schmidt suffers from an anxiety disorder, irritable bowel syndrom (IBS), and pain in his back and shoulder. In 1999 Schmidt applied for Social Security Disability Insurance benefits and Supplemental Security Income. Following a hearing before an Administrative Law Judge (ALJ), Schmidt's application for benefits was denied on the grounds that he possessed the residual functional capacity to perform his past relevant work as either a group home manager or a data entry clerk.

The denial of benefits was subsequently upheld by both the Social Security Appeals Council and the district court.

In this appeal Schmidt contends that he was denied the opportunity to be represented by counsel before the Appeals Council, that he was denied the opportunity to present evidence to the Appeals Council, that the ALJ's decision was not supported by substantial evidence, and that new evidence, unheard by the ALJ, requires remand for a new hearing. We find no merit to any of Schmidt's requested grounds for relief and affirm the decision of the district court.

## I. Background

Schmidt was born in 1950 and has a college degree in psychology. His work history includes stints as a group home manager, a data entry clerk, and a department store salesperson. His longest continuous period of employment lasted from October 1993 to July 1995, during which time he worked as a sales associate for a department store. Between April and June of 1998, Schmidt worked as a "disability facilitator" in a group home. The onset of medical conditions culminating in Schmidt's alleged disability began in earnest approximately four months after he left the position at the group home. In October 1998 he began to experience panic attacks—a condition that Schmidt had apparently encountered in the past but that had only recently returned. These attacks, caused by generalized feeling of anxiety, lasted anywhere from several seconds to five minutes and manifested themselves in the form of chest pain, hyperventilation, rapid heartbeat, and dizziness. Schmidt's primary care physician prescribed Xanax as needed to control his feelings of anxiety.

In February 1999 Schmidt presented himself at a hospital emergency room complaining of abdominal pain and was diagnosed as suffering from IBS, in the form of chronic diarrhea, and generalized anxiety. In March 1999 Schmidt

again went to the emergency room complaining of hyper-ventilation, chest pain, and anxiety. An EKG revealed no cardiac abnormalities, and Schmidt was advised to continue taking Xanax as needed to control his feelings of anxious-ness.

On May 7, 1999, Schmidt filed his application for Social Security benefits, alleging that he had been disabled since December 23, 1998 as a result of his anxiety disorder, IBS, and back pain related to a slipped disc.

In May 1999 Schmidt was evaluated by a psychiatrist, Dr. Root, who diagnosed him as suffering from panic disorder with moderate symptoms. This doctor prescribed Lorazepam (in preference to Xanax) for controlling the symptoms of a panic attack. At a follow-up visit with Dr. Root in June 1999, Schmidt reported that Lorazepam had been largely successful in controlling the symptoms of his panic attacks and that he had begun taking an herbal medication that had been helpful in controlling his anxiety.

On August 4, 1999, Schmidt was examined by Dr. Bahri O. Gungor at the request of the Social Security Administration. Schmidt complained of back pain secondary to a disc problem, IBS, and a history of "three major panic attacks" since October 1998. Dr. Gungor's examination re-vealed few physical abnormalities. He noted that Schmidt essentially had full range of motion, albeit with some back discomfort accompanying certain movements. A spinal x-ray demonstrated "undue prominence of the transverse process of L3," but Dr. Gungor found the significance of this condition to be "questionable." The physician's report concluded that Schmidt suffered from recurrent panic at-tacks with hyperventilation, chronic lower back pain, and occasional bouts of severe diarrhea.

On August 17, 1999, two physicians consulting with the Social Security Administration reviewed Schmidt's medical

history and rendered their opinions. A psychiatrist, Dr. Warrior, concluded that Schmidt suffered from a non-severe anxiety disorder that only slightly restricted his daily activities and that had never caused any episodes of deterioration in a working environment. Another physician completed a Residual Functional Capacity Assessment and concluded that although Schmidt had spondylolisthesis and IBS, he was physically capable of performing a full range of light work, including lifting up to twenty pounds and sitting, standing, or walking for up to six hours of an eight-hour workday.

Schmidt saw his psychiatrist, Dr. Root, in October 1999 and reported that he had experienced only one panic attack in the preceding six-week period and had been successfully controlling his attacks through the use of Lorazepam combined with meditation.

Five days after this psychiatric appointment, Schmidt took a job as a "mail order clerk" doing data entry for a gift supply company. He had worked for this company in the past. He continued in this job until he was laid off in February 2000. Schmidt then applied for and received unemployment compensation benefits from the State of Wisconsin.

The hearing before the ALJ took place on September 20, 2000. Schmidt testified that he was not currently receiving any treatment for his back pain and that he had not seen a mental health professional in the eight-month period immediately preceding the hearing. He stated that he had to spend quite a bit of time in the bathroom due to his IBS and that this condition had made it difficult for him to maintain his recent employer's minimum production requirements. Schmidt was unsure whether the employer intended to re-hire him. He informed the ALJ that he had been hospitalized twice in the preceding six weeks for panic attacks. At the conclusion of the hearing, the ALJ informed Schmidt's counsel that the record would be held open for thirty days

to allow him to obtain and submit records of these hospitalizations. However, when the records were submitted, they demonstrated only that Schmidt had been seen at the hospital for complaints of abdominal pain related to irritable bowel syndrome and a kidney stone. The records made no mention of panic attacks or their related symptoms.

The ALJ rendered his decision on December 12, 2000. The ALJ found that Schmidt was not disabled for purposes of disability insurance benefits or supplemental security income because he was physically capable of performing his past relevant work as a group home worker or data entry clerk. After comparing the physical requirements of Schmidt's past work to his residual functional capacity for a full range of light work, the ALJ concluded that neither of Schmidt's two most recent jobs would require him to perform any tasks that exceeded his residual functional capacity.

Schmidt's attorney then petitioned the Social Security Appeals Council for review of the ALJ's decision. In a letter dated January 23, 2001, counsel stated his intent to submit additional evidence to support Schmidt's claim before the Appeals Council. The Appeals Council responded with notice to Schmidt's attorney that it would hold the record open for an additional twenty-five days for the purpose of allowing the submission of additional evidence or argument. The notice stated that if nothing was received from Schmidt within the twenty-five-day window, "the Council will proceed with its action on this case based upon the present record," and that the Council "will not grant you another extension of time to submit evidence and/or legal arguments in the absence of extraordinary circumstances."

At 4:00 p.m. Eastern Time on the day the extension expired, a different attorney faxed a letter to the Appeals Council stating that Schmidt's original counsel "has informed [Schmidt] that he can no longer represent him due

to a conflict of interest." This correspondence stated that the new attorney was assuming representation in the case and requested an additional sixty-day extension to "obtain new medical information and to prepare the brief in this matter." No information was provided as to the nature of the supposed conflict of interest, when it arose, when its existence was communicated to Schmidt, or when the newly retained attorney had been asked to assume representation.

The Appeals Council never acknowledged the new attorney's letter or the request for a second extension of time and on March 21, 2003, issued a decision denying review. The denial of review converted the ALJ's decision into the decision of the Social Security Commissioner for purposes of judicial review. *Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003); 20 C.F.R. § 404.981.

## II. Discussion

### A. New Evidence

Schmidt asked the district court, and he asks this court on appeal, to remand his case back to the Social Security Commissioner for consideration of additional evidence. A reviewing court may order additional evidence to be taken before the Commissioner upon a showing that there exists "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Perkins*, 107 F.3d at 1296. New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. *Johnson v. Apfel*, 181 F.3d 770, 776 (7th Cir. 1999). Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by

the disability application under review." *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990).

The "new" evidence championed by Schmidt comes in three forms: (1) medical records documenting treatment for his mental and physical impairments that occurred between January 2002 and August 2003; (2) a mental impairment questionnaire prepared by Dr. Alpa Shah on September 11, 2003; and (3) three job performance evaluations completed by Schmidt's most recent employer (the mail order company) dated January 21, 1998; December 28, 1998; and February 29, 2000.

The district court held that none of this material meets the criteria for "new and material" evidence. We agree. With respect to the medical records and the mental impairment questionnaire, Schmidt concedes that the treatment reflected in those records was undertaken anywhere from one to three years *after* the ALJ rendered his decision. None of the proffered evidence speaks to Schmidt's condition as it existed at or prior to the time of the administrative hearing. Schmidt argues that this distinction is irrelevant because the records document treatment for the very same ailments alleged to constitute his disability in the proceedings below as opposed to reflecting an entirely new injury or disabling condition that first developed after the hearing. However, this court has held that medical records "postdating the hearing" and that "speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration" do not meet the standard for new and material evidence. *Kapusta*, 900 F.2d at 97. *See also Godsey v. Brown*, 832 F.2d 443, 445 (7th Cir. 1987) ("The evidence here was immaterial . . . since the fact that her condition had deteriorated by 1986 does not show that in 1983 it was otherwise than found at the administrative hearing."); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989) (remand is appropriate only where the new evidence is "material to the claimant's condition during

the relevant time period encompassed by the disability application under review"); 20 C.F.R. § 404.970(b) (Appeals Council will consider new and material evidence "if it relates to the period on or before the date of the administrative law judge hearing decision.").

Thus, medical records that document Schmidt's condition as it existed one to three years *after* the ALJ rendered his decision, while "new," do not constitute "material" evidence for purposes of a potential remand pursuant to 42 U.S.C. § 405(g). As previously mentioned, evidence is material only to the extent that it could have affected the outcome of the ALJ's decision. Medical records documenting Schmidt's medical condition as it existed in 2002-03 could not have affected the bottom line of a decision rendered in December 2000.

Schmidt's attempt to characterize the employment records as new and material evidence fails for a different reason. It is undisputed that these records existed and were available to Schmidt at the time of the administrative hearing. Indeed, the most recent of these evaluations predates the administrative hearing by seven months. Schmidt has offered no explanation as to why the records were not submitted to the ALJ in time for consideration as part of the record in the administrative proceeding. Clearly then, this evidence is not "new" for purposes of our authority to order a remand pursuant to 42 U.S.C. § 405(g).

Schmidt suggests that the employment records were "new" evidence because they could have been submitted to the Appeals Council *if* the Council had granted his eleventh-hour request for a sixty-day extension for the submission of additional evidence. While not stated explicitly in his briefing to this court, we presume that Schmidt intends this argument as a vehicle for demonstrating good cause as to why the employment records were never submitted to the Social Security Administration. In essence, Schmidt would

have us hold that a claimant who fails to submit readily available evidence to an ALJ, then obtains an extension of time to submit additional evidence to the Appeals Council but fails to submit any evidence during the extended period, may justify these failures by pointing to a second, last-minute request for a second extension of time that was not granted. We decline to so hold. The employment records were in existence and available to Schmidt at the time of the administrative proceeding, and he was given ample opportunity to submit them both before and after the hearing. This evidence is not new and no good cause has been demonstrated for the failure to incorporate it into the administrative record.

### B.  The Right to Submit Evidence

Schmidt contends that the Appeals Council's silence in the face of his new attorney's letter requesting additional time to submit evidence and argument worked several egregious harms. To briefly review the pertinent series of events, Schmidt's counsel wrote to the Appeals Council in January 2001 requesting review of the ALJ's decision. This request was not accompanied by any additional evidence as required by federal regulations. 20 C.F.R. § 404.968. Rather, the correspondence merely stated, "I intend to submit additional evidence in support of Mr. Schmidt's claim[.]" Nineteen months later the Appeals Council responded by advising Schmidt that he would be granted an additional twenty-five days from the date of the notice to submit evidence, that further extensions would not be granted in the absence of "extraordinary circumstances," and that the Appeals Council would act upon the record as it existed if no evidence was received within the twenty-five-day period.

On the very last day of the extended period for submitting new evidence, at four o'clock in the afternoon, a different lawyer faxed correspondence to the Appeals Council stating

only that he had assumed Schmidt's representation, that Schmidt's original attorney "can no longer represent him due to a conflict of interest," and requesting a sixty-day extension to obtain "new medical information and to prepare the brief in this matter." The letter offered nothing in the way of an explanation as to the nature of the alleged "conflict of interest," when it arose, when it was communicated to Schmidt, or when substitute counsel was contacted or retained. No attempt to shed light on these questions was made before the district court and none has been made before this court. The Appeals Council did not respond to this correspondence and denied review based upon the record as it then existed.

Schmidt contends that the Appeals Council's decision not to further extend the applicable deadline constitutes a denial of his right to be represented by an attorney and his right to submit additional evidence. Vague references are made in his briefs to "due process," and citation is made to cases discussing the procedures an ALJ must follow for obtaining a valid waiver of counsel from a claimant who proceeds *pro se* at an administrative hearing. None of these arguments has any bearing on the situation presented in this case because Schmidt was not "denied" anything other than an additional extension of time to submit evidence.[1] There is no evidence in this record that Schmidt was ever without the assistance of an attorney or that he desired or attempted to proceed *pro se* at some point in the proceedings. There is no evidence from which to conclude that Schmidt was denied the opportunity to present new evidence or ar-

---

[1] Schmidt offers no authority for the proposition that there is a constitutional or statutory right to be represented by an attorney before the Social Security Appeals Council or a right to submit additional evidence to the Council. We need not reach the question of the existence or nonexistence of such rights in this case because the Appeals Council's implicit denial of the request for another extension of time did not implicate any such putative rights.

gument to the Appeals Council.[2] Stripped of the rhetorical veneer of a discussion about "rights," what Schmidt is really arguing is that his attempt to change attorneys at the eleventh hour is a *de facto* "extraordinary circumstance" that justified an additional extension of time. In the absence of any evidence illuminating the circumstances leading up to the attempted last-minute intervention of a new attorney, or any explanation whatsoever as to why Schmidt could not have submitted his additional evidence within the original deadlines established by the Appeals Council, there is no basis upon which to conclude that "extraordinary circumstances" exist in this case such that the Appeals Council should have further extended the applicable deadlines.

### C.  The ALJ's Decision

Schmidt contends that the ALJ's decision, made final by the Appeals Council's denial of review, was not supported by substantial evidence and that remand for a new hearing is justified pursuant to 42 U.S.C. § 405(g). Specifically, Schmidt claims that the ALJ's assessment of the severity of his mental and physical impairments is not supported by the evidence and that the ALJ improperly discounted his subjective complaints of pain.

#### 1.  Standard of Review

In appeals concerning the denial of Social Security benefits, challenges to the sufficiency of the evidence rarely succeed for the simple reason that "the findings of the

---

[2]  The Appeals Council may, pursuant to federal regulation, consider new and material evidence not submitted to the ALJ if such evidence is forwarded to the Council within sixty days of a claimant's receipt of the ALJ's decision. 20 C.F.R. § 404.968. Schmidt obtained one extension of time and was warned that no further extensions would be granted absent "extraordinary circumstances."

Commissioner, if they are supported by substantial evidence, are conclusive." *Perkins*, 107 F.3d at 1296; 42 U.S.C. § 405(g). The Court of Appeals does not substitute its judgment for that of the ALJ, and an ALJ's decision will be upheld where there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). In rendering his decision, an ALJ must "build a logical bridge from the evidence to his conclusion," *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), but he need not provide a "complete written evaluation of every piece of testimony and evidence." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

### 2.  Severity of Mental Impairment

Schmidt takes issue with the ALJ's conclusion that his panic attacks do not impose any significant work-related limitations on his functioning. In support Schmidt points to medical evidence in the record demonstrating that he suffered "repeated panic attacks" requiring "medical attention" and that medication did not significantly improve his condition. Schmidt places heavy reliance on a statement in Dr. Root's report to the effect that Schmidt's "insight" was "somewhat limited." In Schmidt's view this isolated comment should be interpreted as establishing his status as an unreliable historian of his own symptoms and utilized as a means by which to discount his own account of his condition as narrated to Dr. Root. Finally, Schmidt argues that if Dr. Root had considered his panic attacks to have completely resolved by the time of his second examination, the doctor would not have continued the prescription for Lorazepam.

The ALJ's assessment that Schmidt's occasional panic attacks imposed no more than minimal work limitations is supported by substantial evidence. First, there is no basis for Schmidt's self-serving conclusion that Dr. Root's "insight

is somewhat limited" comment should be interpreted as mandating wholesale rejection of Schmidt's own narration of his condition to his treating physician. Dr. Root did not explain this comment, and it is clear from the medical records that Dr. Root put great faith in Schmidt's ability to accurately describe his own condition. As a result, the ALJ was justified in relying on the records in which Schmidt informed Dr. Root that his panic attacks and feelings of anxiety were well controlled with medication. Second, the ALJ never concluded that Schmidt's anxiety had "completely resolved," as Schmidt seems to contend on appeal. Rather, as noted, the ALJ found that the condition could be controlled with medication. The ALJ was also justified in relying upon the report of Dr. Warrior, the state agency medical consultant, to the effect that Schmidt's mental condition imposed only slight functional limitations. Finally, the ALJ reasonably relied upon the fact that Schmidt had, during the relevant time period, been employed for four continuous months doing data entry and had lost his job not due to an inability to perform, but rather due to a decreased workload resulting in layoffs. Indeed, in applying for unemployment compensation, Schmidt represented to the relevant state authorities that he was available to work and actively seeking employment.

In short, Schmidt's arguments pointing to record evidence contradicting the ALJ's assessment of the severity of his mental impairment fall far short of undermining the ALJ's conclusions. At the very least, the evidence of record would allow reasonable minds to differ as to the severity of Schmidt's impairment, requiring deference to the ALJ's conclusion. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

### 3. Fatigue Resulting from IBS

At the hearing Schmidt testified that his IBS results in feelings of fatigue. He contends on appeal that the ALJ mis-

takenly concluded that "the record contains no evidence whatsoever to either identify or substantiate the claimant's allegations of chronic fatigue." In support Schmidt states only that the medical evidence established that he "had several bouts of diarrhea." Proceeding from this premise, Schmidt states without citation that "IBS is known to cause fatigue." Therefore, the argument goes, the fact that Schmidt suffered from IBS is *ipso facto* evidence that he also suffered from fatigue.

There are numerous leaps of logic involved in this argument that diminish its effectiveness as a vehicle for undermining the ALJ's conclusion. Even assuming the accuracy of Schmidt's unsupported contention that some persons with IBS may experience fatigue, this does not mean that Schmidt suffers this symptom; the ALJ was correct in noting that there is no objective support in the medical records for Schmidt's contention that he suffers from IBS-related fatigue. Further, Schmidt never even subjectively reported fatigue as a symptom to any of the physicians whose reports were made part of the record. Also, Schmidt was able to maintain substantial gainful employment during his alleged period of disability despite his later claims of disabling fatigue. The ALJ's finding is supported by substantial evidence, and his credibility determination concerning Schmidt's testimony about his level of fatigue is not "patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

### 4.  Unemployment Compensation

Schmidt contends that the ALJ erred when he included Schmidt's application for and receipt of unemployment compensation benefits among a long list of factors adversely affecting Schmidt's credibility regarding his subjective complaints. Specifically, the ALJ's credibility assessment includes the statement that "the claimant testified that he applied for and collected unemployment compensation . . .

which required ready-to-work certification, and he also admitted that he has applied for a number of jobs since that time, but has not been hired for these jobs." Schmidt contends that his collection of unemployment should be irrelevant because "many people" might actively seek work and yet wind up unable to physically perform the job once it is received. These hypothetical people, Schmidt opines, may be forced into applying for work due to desperate financial situations or do so out of a misconception regarding the extent of their own physical limitations.

There may indeed be particular people to whom Schmidt's analysis applies, but he fails to even suggest that he is among their number. He does not argue that he was forced into seeking employment by desperate financial straights, or that he did so out of a misapprehension of his own condition. Further, while we have previously held that "employment is not proof positive of ability to work," *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998), we are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability. To what extent such considerations may factor into the analysis is better left for another case, because here the ALJ regarded Schmidt's unemployment experience as one of many factors adversely impacting his credibility.

### 5. Credibility Assessment Concerning Pain

Finally, Schmidt contends that the ALJ improperly evaluated his testimony concerning subjective complaints of pain by failing to consider the relevant factors outlined in 20 C.F.R. § 404.1529, Social Security Ruling 96-7p, and our decisions including *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995); *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir.

2003); and *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from "merely ignoring" the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding. *See Lopez*, 336 F.3d at 539; *Knight*, 55 F.3d at 314.

The ALJ's assessment of Schmidt's credibility did not run afoul of the applicable analytical framework. The decision notes not only the absence of objective medical evidence to support the severity of the pain to which Schmidt testified, but goes on to consider that Schmidt's daily living activities were not significantly restricted, that he was not receiving any active treatment or therapy for his conditions at the time of the hearing, that he was not using any prescription medication, and that his alleged pain did not prevent him from engaging in substantial gainful activity for several months after he allegedly became disabled. By considering these factors and explaining how they factored into his credibility analysis, the ALJ properly followed the requirements for evaluating the credibility of a claimant's subjective complaints. Further, we find that the ALJ's conclusions in this regard are supported by substantial record evidence. Schmidt's contentions to the contrary are nothing more than a rehash of the medical records that do not point to any specific evidence contradicting the ALJ's conclusions. In the end, we conclude that the ALJ's credibility determination is not patently wrong, is supported by substantial evidence, and is sufficiently detailed that we are able to trace its path of reasoning. *See Knight,* 55 F.3d at 315; *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

The decision of the district court is AFFIRMED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*