**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2006
Decided March 1, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-2649

MARJORIE H. HOFSLIEN,
  *Plaintiff-Appellant,*

  *v.*

JO ANNE B. BARNHART,
  *Defendant-Appellee.*

Appeal from the United States
District Court for the Western
District of Wisconsin

No. 04-C-822-S

John C. Shabaz,
*Judge.*

**O R D E R**

Marjorie Hofslien appeals the district court's order upholding the decision by an administrative law judge (ALJ) to deny her application for social security disability insurance benefits. She principally argues that the ALJ should have accorded controlling weight to evidence from her treating psychiatrist. In this order we address the merits of her contentions, and, in a separate published opinion issued today, we clarify the weight due evidence submitted by a treating physician.

Hofslien is 55 years old, has a college education, and has worked most of her career as an elementary school teacher. She stopped working in April 2001 and maintains that she cannot return to work due to severe depression and an obsessive-compulsive anxiety disorder. These conditions, she testified, have rendered her thinking so "muddled" and "disorganized" that it takes her a week to do what she used to do in a day. Feeling overwhelmed by the simplest things, she

often needs to "shut down," experiences near-daily panic attacks, and is unable to get out bed about once a week. She was in counseling, with short breaks, from before the time she says she became disabled through the time of her hearing. She also started group therapy, but quit after three sessions. In July 2001 she saw a psychiatrist, Dr. Peck, who diagnosed her with a depressive disorder, anxiety disorder, obsessive-compulsive personality traits, and a cognitive disorder. He prescribed anti-depressant and anti-anxiety medications and continued to see her regularly through the time of her hearing, periodically changing or updating her prescriptions as needed.

Hofslien has been evaluated by a host of medical professionals, and there is no consensus regarding her fitness for work. Neuropsychologists reported that her cognitive functioning was essentially normal. Two state agency psychologists, reviewing the medical evidence in 2002, opined that despite her symptoms "the overall file evidence does not document a complete inability to sustain all types of work" and that she retained "the capacity to perform unskilled work." Dr. Peck however has repeatedly opined that she cannot work. A consulting psychiatrist, Dr. Weggle, saw Hofslien once and agreed with Dr. Peck. But Dr. Weggle also assigned Hofslien a "Global Assessment of Functioning" score of 54, indicating only moderate limitations in social and occupational functioning.

A psychologist, Dr. Caillier, testified at the hearing as a medical expert. He stated that the limitations Hofslien experienced in performing her daily activities "appear to be volitional or voluntary . . . in other words, when she needs to do something she does it." As to the difficulties Hofslien reported in maintaining concentration, persistence and pace, Dr. Caillier, opined that they too "appear to be volitional." He acknowledged that Hofslien had moderate restrictions in these areas and in social functioning, but commented that she could still perform simple, repetitive work involving no more than two-step directions, only minimal contact with the public and supervisors, and no more than normal production standards. The ALJ then asked the vocational expert (VE), who had listened to the testimony and reviewed the record, if someone of Hofslien's age and past work experience, with the capacity for only such simple, repetitive work was employable. The VE testified that teaching was out of the question, but added that those limitations could be accommodated in several thousand jobs, including housekeeper, hospital cleaner, and kitchen assistant.

Following the familiar five-step inquiry, *see* 20 C.F.R. § 404.1520, the ALJ first found that Hofslien had not worked since April 2001. Second, the ALJ found that Hofslien had been severely impaired by depression, obsessive-compulsive anxiety disorder, and a cognitive disorder. In evaluating Hofslien's mental impairments, *see* 20 CFR 404.1520a; Part 404, Subpart P, Appendix 1, § 12.00, the ALJ considered her testimony and the competing medical evidence and found that

she had moderate but not severe restrictions in activities of daily living, social functioning, and maintaining concentration, persistence or pace.  Third, the ALJ found that none of Hofslien's impairments met or equaled a listed impairment in Appendix 1, Subpart P, Regulation No. 4.

At steps four and five the ALJ found that Hofslien lacked the residual functional capacity to return to teaching, but could perform other jobs available in the region.  To the extent Hofslien testified that her impairments completely restricted her from working, the ALJ found her testimony "not wholly credible" due to inconsistencies with the medical record, principal among them the opinions of Dr. Caillier and the state agency psychologists.  The ALJ also determined that Hofslien had the RFC to perform "simple, repetitive work" involving at most "two-step directions . . . minimal contact with the public, supervisors or coworkers and . . . normal production standards" and no "assembly line work or work production pressures."  *See* 20 CFR § 404.1545.  The ALJ rejected Dr. Peck's contrary opinion that Hofslien was incapable of any work because it was inconsistent with the opinions of Dr. Caillier and the state agency psychologists.

We will uphold an ALJ's decision if it is supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  Evidence is "substantial" when it is "sufficient for a reasonable person to accept as adequate to support the decision."  *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (internal quotations omitted).

Hofslien argues that the ALJ erred under the "treating physician rule" by not according controlling weight to the opinion of Dr. Peck.  On a number of forms he completed, Dr. Peck assessed Hofslien's functional abilities as "poor" in work related areas and reported that she was incapable of working.  The ALJ discounted Dr. Peck's opinion, however, because it conflicted with the opinions of Dr. Caillier and the state agency psychologists.

As discussed in our separate published opinion in this case, a treating physician's opinion does not enjoy a presumption of correctness in a case like this where evidence opposing it was introduced.  Dr. Peck's opinion that Hofslien's depression made her unemployable was undercut by the opinions of Dr. Caillier and the state agency psychologists that she can perform some unskilled work in spite of her symptoms.  Accordingly, the ALJ properly discounted it.

Hofslien next argues that the hypotheticals the ALJ posed to the VE improperly omitted a specific description of the mental limitations caused by her psychiatric disorders.  The hypotheticals posited an individual of Hofslien's age, education, work experience and depressive disorder, limited to "simple repetitive work, involving no more than minimal contact with the public, supervisors, or co-

workers, and should not involve more than normal production standards . . . [or] any assembly line or . . . production pressures." Hofslien contends that the ALJ should have additionally based the hypotheticals on a person who was—as the ALJ found she was—moderately restricted in her activities of daily living, in maintaining social functioning, and sustaining concentration, persistence, and pace.

When an ALJ relies on a VE's testimony, the hypothetical questions must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Idoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). But the hypotheticals here reflected Hofslien's moderate restrictions in social functioning by limiting social contact with supervisors, co-workers, and the public. And they captured her moderate restrictions daily living and maintaining concentration, persistence, and pace by limiting production pressures and prohibiting assembly line work. Nothing more was required.

Finally, Hofslien argues that the ALJ's adverse credibility finding—"to the extent she asserts her impairments restrict her from all work activity"—is not supported by substantial evidence. An ALJ's credibility determinations is entitled to "special deference" because of her unique ability to observe and evaluate testimony. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). But an adverse credibility determination must be supported by reasons sufficiently specific to enable meaningful appellate review, *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003), and not "patently wrong," *see Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

The ALJ's decision not to "wholly credit" Hofslien's testimony is entitled to our deference. The ALJ explained that Hofslien's testimony that she sometimes cannot get out of bed conflicted with the opinion of Dr. Caillier that "when she needs to do something she does it" as well as the opinions of the state agency psychologists. The ALJ also properly considered the medical evidence that Hofslien received only conservative treatment and her choice to quit group therapy and to temporarily stop attending counseling. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Schmidt*, 395 F.3d at 747; *Powers*, 207 F.3d at 435-36.

The ALJ's decision is supported by substantial evidence. We AFFIRM the district court's judgment.