**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 31, 2007[*]
Decided November 6, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1771

| | |
|---|---|
| TAMERA L. RASMUSSEN, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | |
| | No. 05-1315 |
| MICHAEL J. ASTRUE, *Defendant-Appellee.* | Joe Billy McDade, *Judge.* |

**O R D E R**

Tamera Rasmussen applied for Disability Insurance Benefits and Supplemental Security Income, claiming that she cannot work because she suffers from chronic back and knee pain, anxiety, depression, borderline intellectual functioning, bone spurs in her heels, obesity, fibromyalgia, and a heart condition.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

After her claim was administratively denied, an administrative law judge conducted a hearing. The ALJ found that Rasmussen's impairments did not render her disabled, and the Social Security Appeals Council denied Rasmussen's request for review. The district court affirmed, finding that the ALJ's decision was supported by substantial evidence. Rasmussen appeals, and we also affirm.

At the hearing before the ALJ, Rasmussen provided testimonial and documentary evidence to support her claim. She stated that the primary reason she cannot work is her disabling knee and back pain. Rasmussen testified that her medications—Alprazolam and Methadone, which treat her anxiety and pain symptoms—make her drowsy but are otherwise effective. She has a heart condition from using the diet drug Fen-Phen, but Rasmussen said this causes no problems for her aside from occasionally affecting her breathing at night. She testified that her pain severely limits her mobility. For example, at any one time she can sit for only up to half an hour, stand for only five minutes, walk for only a couple of minutes, and lift only six pounds. Nevertheless, Rasmussen also reported regularly vacuuming, dusting, cooking, and sweeping.

Rasmussen also described her educational and work history. She does not have a high school degree, but she completed the eleventh grade in a special-education program. Over the years, Rasmussen worked in a variety of unskilled and semi-skilled jobs, including dishwashing and cooking at a restaurant, managing a cheese shop, serving food in a nursing home, grooming dogs, hand-packaging surgical gloves in a factory, and cashiering at Goodwill, a gas station, and a video store. At the time of the hearing, Rasmussen had not worked in nearly one year, having left her last job as a cashier because she could not stand or stay awake for her entire four-to-six-hour shift.

To support her testimony, Rasmussen provided medical evidence documenting her physical and mental health. Her medical records show that she has consistently sought treatment for back, knee, and heel pain over the past nine years. Her treating physicians, however, have uniformly found only mild physical evidence corroborating Rasmussen's complaints, diagnosing at most some disc degeneration in her spine and a bone spur on her heel. Rasmussen also underwent several surgeries in 1999, including a hysterectomy, a breast lumpectomy, and surgery for gallstones and urinary incontinence. Her medical records do not reveal any continued complaints related to these surgeries. Rasmussen's primary-care physician has prescribed drugs to treat her anxiety and depression, although Rasmussen has not seen a mental-health specialist.

Rasmussen's medical records also document numerous emergency-room visits at various hospitals—nearly 50 ER visits between 1998 and 2001 alone—seeking treatment for pain and prescriptions for Vicodin, to which she eventually developed an addiction. She additionally sought prescriptions for Vicodin from several

primary-care doctors. Rasmussen justified her requests for Vicodin by explaining that she had injured herself performing a wide range of demanding activities including mowing her lawn, climbing a ladder, and painting her mother's house.

The ALJ considered psychological and physical evaluations requested by the state agency. Dr. Spence, the evaluating psychologist, diagnosed Rasmussen with dysthymia (a mild form of depression), borderline intellectual functioning, and anxiety disorder. Dr. Spence found that, even given these psychological limitations, Rasmussen could follow instructions, handle funds, and complete short tasks over an extended period so long as she could do so in a low-stress environment. The medical examiner, Dr. Katchen, noted that Rasmussen had some nerve pain and moderate weakness in her left leg that could be aggravated by extended movement. Dr. Katchen also observed that Rasmussen has a systolic ejection murmur, but no cardiac decompensation, and that she suffers from obesity and chronic shortness of breath. Dr. Katchen concluded that although she could not find any physical abnormality explaining Rasmussen's back or knee pain, Rasmussen did have mild to moderate difficulty walking, hopping, and squatting.

A vocational expert testified at the hearing regarding the employment prospects for a hypothetical person with Rasmussen's education and work experience and the capacity to perform medium or light work requiring only simple, routine, low-stress tasks. The vocational expert opined that such a person could perform Rasmussen's past jobs as a hand packager or a cashier. The vocational expert also testified that many Illinois jobs satisfied Rasmussen's work restrictions. However, he admitted that if Rasmussen's claims of disabling pain were believable, she would not be able to work at these jobs. The vocational expert did not consider whether Rasmussen's medications might change his assessment.

After considering all the proffered evidence, the ALJ concluded that Rasmussen was not disabled. In so finding, the ALJ applied the five-step analysis described in 20 C.F.R. § 404.1520(a)(4)(i)-(v) to find that Rasmussen had not engaged in substantial gainful employment since the alleged onset of her disability (step one); that her combined physical and mental conditions constituted a severe impairment (step two); but that these impairments did not qualify as any listed impairment (step three). The ALJ placed particular emphasis on Rasmussen's drug-seeking behavior, admissions of physically strenuous activities, and the absence of medical records corroborating her reports of disabling pain to conclude that Rasmussen's testimony regarding her pain and limitations was not credible. After determining that Rasmussen retained the residual functional capacity to perform medium work, the ALJ concluded that Rasmussen could perform her past relevant work as a hand packager (step four) and that, in the alternative, she could perform other light or sedentary work in the national economy (step five).

Rasmussen presents four challenges on appeal. She first contests the ALJ's conclusion that her testimony was not credible. Rasmussen next contends that the ALJ erred in concluding that substantial evidence supported denying her benefits. Third, Rasmussen argues that new evidence of her disability warrants remand under 42 U.S.C. § 405(g). Finally, Rasmussen raises two procedural challenges: she argues that the district court erroneously granted an extension of time to the government to file its brief and that the ALJ improperly failed to consider a letter from Rasmussen's counsel.

Because the Social Security Appeals Council denied Rasmussen's request for review, the ALJ's decision is the final decision of the Commissioner of Social Security. *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). In reviewing that decision, we are limited to examining whether it is supported by substantial evidence. 42 U.S.C. § 405(g); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner*, 478 F.3d at 841 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). *Id.* Although we may not substitute our judgment for that of the ALJ, the ALJ must at least minimally articulate the analysis of the evidence with enough detail and clarity to permit meaningful appellate review. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Rasmussen first challenges the ALJ's finding that her testimony was not credible. The ALJ is best situated to assess witness testimony and demeanor, so we will not disturb credibility determinations as long as they are supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). We will therefore only reverse the ALJ's credibility determination if Rasmussen can show that it was "patently wrong." *Id.* She has not done so.

The record amply supports the ALJ's conclusion that Rasmussen's assertions of severe chronic pain are not supported by clinical diagnoses. Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). Here, the ALJ properly considered Rasmussen's testimony in light of the factors enumerated in SSR 96-7p and concluded that Rasmussen had significant functional limitations that precluded some, but not all, work. *See* 20 C.F.R. § 404.1529(c)(3). Moreover, Rasmussen's doctors consistently found that she has at most mild back and knee problems. It was not patently wrong for the ALJ to place more weight on the medical record than on Rasmussen's testimony regarding her pain.

The record also supports the ALJ's finding that Rasmussen's numerous emergency-room visits were motivated more by her desire to acquire Vicodin than by injury or pain. Rasmussen's doctors expressed concern about her Vicodin

consumption; one doctor noted that Rasmussen photocopied a prescription for Vicodin (although Rasmussen vehemently denies this), and Rasmussen herself concedes that she has a history of Vicodin addiction. And the record supports the ALJ's conclusion that Rasmussen was less than credible because she engaged in activities (such as lawn-mowing) that were inconsistent with her claims of disabling pain. *See Prochaska v. Barnhart*, 454 F.3d 731, 737-38 (7th Cir. 2006) (upholding ALJ's finding that claimant was not credible where her description of daily activities was inconsistent with her purported disability). On this record, it was reasonable for the ALJ to find Rasmussen's testimony not credible.

Rasmussen next asserts that the ALJ's decision is not supported by substantial evidence. She argues that, given the vocational expert's testimony that he did not consider the side effects of her medications when assessing her job prospects, the ALJ should have concluded that those side effects impair her ability to work. But Rasmussen has presented no evidence of her medication's side effects beyond her own testimony, nor do the medical records support her claim that the drowsiness caused by her medications is so disabling that she cannot work. Although the ALJ could have addressed Rasmussen's drowsiness more comprehensively, we concur with the district court's conclusion that the failure to do so is harmless. *See Prochaska*, 454 F.3d at 736-37 (holding that the ALJ's failure to explicitly address claimant's obesity was harmless because she failed to point to any evidence supporting her claim that her obesity significantly exacerbated her physical impairments). Rasmussen also contends that the ALJ should have given greater weight to the vocational expert's testimony that someone with all of Rasmussen's self-reported limitations could not work. But the ALJ's credibility determination, together with the absence of any medical records corroborating Rasmussen's self-reported pain, support the conclusion that she can work. Rasmussen has not shown that the ALJ's decision is unsupported by substantial evidence.

Rasmussen next argues that the Appeals Council and the district court should have considered additional evidence she provided after the ALJ denied her claim. As an initial matter, we cannot consider Rasmussen's new evidence in reviewing the ALJ's decision. *See* 42 U.S.C. § 405(g). But a reviewing court may remand for additional evidence to be considered if it is both new and material, and if there exists "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*; *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005). Evidence counts as new if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Schmidt*, 395 F.3d at 741-42 (citation omitted). And it is material only if it is reasonably probable that the ALJ would have reached a different conclusion if he had considered the evidence. *Id.* New evidence is therefore material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review." *Id.* (citation omitted).

Rasmussen's new evidence falls into two categories. First, she argues that we should remand the case back to the Commission to consider certain documents she submitted to the Appeals Council, but not to the ALJ. But the Appeals Council did consider Rasmussen's additional evidence when concluding that it was insufficient to warrant review of the ALJ's decision. Rasmussen's request for a remand on this ground is without merit. Rasmussen also argues we should remand so the Commission may consider a second category of documents she provided to the district court, but not to the Appeals Council or the ALJ. But these documents describe her health only after the date that the ALJ denied her claim, so they are not material. *See Schmidt*, 395 F.3d at 742. Remand based on this evidence is inappropriate as well, and Rasmussen's only remedy is to file a new claim for benefits.

Finally, Rasmussen raises two procedural issues. She first argues that the district court erred in granting the government's request to extend the time to file its brief. Federal Rule of Civil Procedure 6(b)(2) grants district courts the power to impose and enforce deadlines, *see Raymond v. Ameritech Corp.*, 442 F.3d 600, 605 (7th Cir. 2006), and we review an exercise of that power only for abuse of discretion, *id.* at 606. In this case, the Commissioner of Social Security did not receive the district court's scheduling order from the U.S. Attorney's office until nearly two months after the deadline to file its brief had passed. As soon as counsel learned of the missed deadline, she promptly moved for an extension. Under these facts, it was not an abuse of discretion for the district court to extend the deadline, especially because Rasmussen has not shown that she was prejudiced by the extension. *See Pioneer Inv. Servs. Co. v. Brunswick Ass. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Rasmussen also asserts that the ALJ erred in denying her benefits on the day after her attorney sent a letter to the ALJ because the timing suggests that the ALJ could not have possibly considered her attorney's letter. But the attorney's letter merely summarized evidence already in the record—evidence that the ALJ considered in his decision. Even if Rasmussen is right and the ALJ did not receive or read the letter before rendering his decision, he did not err in failing to consider a summary letter where the underlying evidence highlighted by the letter was already part of the basis for his decision.

AFFIRMED.