NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 30, 2013
Decided June 13, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 12-1867

| | |
|---|---|
| LYNN S. GOSSETT<br> *Plaintiff-Appellant,*<br><br>    *v.*<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>    *Defendant-Appellee.* | Appeal from the United States District<br>Court for the Southern District of Indiana,<br>Indianapolis Division.<br><br>No. 1:11-cv-00088-TWP-DKL<br><br>Tanya Walton Pratt,<br>*Judge.* |

**O R D E R**

Lynn Gossett, a former chemist who has suffered for years from severe anxiety, brings this appeal to challenge the district court's denial of his request to remand his application for disability benefits to the Commissioner of Social Security for consideration of new evidence – a so-called "sentence six" remand. See 42 U.S.C. § 405(g). An Administrative Law Judge concluded that Gossett is not disabled, but Gossett would like the agency to consider what he characterizes as a new and material opinion written by a state-agency psychologist six months after the ALJ's ruling. Indeed, Gossett had reapplied for benefits shortly after the ALJ's denial of his application, and the psychologist was writing for the Indiana Disability Determination Bureau, which granted Gossett's request

and awarded him benefits effective the day after the ALJ's decision. After the Commissioner refused to consider the new opinion, Gossett appealed to the district court, where he was also unsuccessful. He now appeals to this court. We conclude, contrary to the Commissioner's argument, that the psychologist's report meets the criteria for a sentence six remand, and so we reverse the district court's judgment and remand this case to the agency for further proceedings.

## I

Gossett suffers from generalized anxiety disorder (GAD), adjustment disorder with depressed mood, and obsessive-compulsive disorder (OCD). He frequently experiences high levels of anxiousness that impair his ability to concentrate and cause him to tremble uncontrollably. At times he is overwhelmed with feelings of doom and hopelessness. He has difficulty interacting with coworkers. He applied for disability insurance benefits, alleging an onset date of February 21, 2007, the day he went on disability leave from his job as a patent research associate at Eli Lilly & Co., a global pharmaceutical company. In support of his claim, he presented the medical records of his psychiatrist, Dr. James Tandy, who had treated Gossett for 20 years. In Dr. Tandy's opinion, although Gossett had been able to perform his work for many years despite his anxiety, his condition recently had worsened and had not improved during a disability leave. After trying numerous medications and treatment methods, Dr. Tandy concluded that Gossett would not be able to return to his job at Eli Lilly and could not perform even part-time work.

Gossett also submitted treatment records from Dr. April Faidley, a psychologist he began seeing in 2005. Dr. Faidley prepared a status report for the Indiana Disability Determination Bureau when Gossett applied for disability benefits. In that report, she concluded that while Gossett suffered from serious anxiety, he nonetheless could "adequately attend to a simple work routine on a consistent basis." (Double-underlined in original.)

A state-agency psychologist, Dr. Joelle Larsen, assessed Gossett's mental residual functional capacity based on the records and opinions of Drs. Tandy and Faidley. Dr. Larsen agreed with Dr. Faidley's conclusion that Gossett was capable of performing simple repetitive tasks. Following that lead, on May 22, 2007, the state agency concluded that Gossett's condition would prevent him from performing his past work at Eli Lilly, but that he could handle a less demanding job. It therefore denied his application for benefits. Gossett requested reconsideration, but the agency denied that after a different consultant, Dr. James Gange, agreed with Dr. Larsen.

Gossett's next step was to request a hearing before an ALJ. During that hearing, he described the activities that he pursued during his disability leave. He exercises every day and goes to a gym for strength training three times a week. He volunteers two hours per week at a library, where he shelves books, even though this work leaves him physically and mentally exhausted. He also plays the trumpet in a community band, which practices for two hours every week and performs once a month.

The ALJ concluded that Gossett retains the capacity to perform work, so long as the work allows for a small amount of distraction, does not involve interaction with the public, requires only occasional interaction with coworkers, and involves simple and repetitive tasks. The judge acknowledged Dr. Tandy's view that Gossett could not perform even part-time work, but she rejected that opinion as inconsistent with both Dr. Faidley's evaluation and Gossett's acknowledged usual activities. The ALJ did not mention the opinions of Drs. Larsen or Gange. A vocational expert testified that there are jobs in the national economy, such as cleaner or assembler, that can be performed by a person with Gossett's limitations. The ALJ accepted the vocational expert's testimony and ruled on January 27, 2010, that Gossett was not disabled.

Gossett challenged this ruling before the Appeals Council of the Social Security Administration. As part of his administrative appeal, he submitted a letter to the Council from Dr. Tandy, who criticized the ALJ's ruling and prepared a new assessment of Gossett's mental residual functional capacity. Gossett also filed a new application for disability benefits, but that application was initially denied. Gossett persisted with a request for reconsideration, however, and at that point the state-agency psychologist assigned to the case, Dr. Kenneth Neville, offered the following opinion (set forth here exactly as it appears in the record):

> Clmt has been in treatment with Dr. Tandy (psychiatrist) for 20 years. Diagnoses of GAD and OCD. Dr. tandy reports that clmt has tried over twenty different medications and several therapies without positive result.Ruminative thinking leads to marked decline in work place performance and social interaction.Dr. tandy states clmt's functioning has steadily declined since '07 and that he is unable to maintain gainful employment.
>
> clmt appears able to carry out several tasks . he works out, plays trumpet, etc. He does apparently experience a good deal of anxiety and exhaustion however in doing so.

.Clmt's anxiety would significantly impair even superficial work type social interaction.

Attention and concentration are markedly limited.

Clmt has poor frustration and tolerance and would be unable to tolerate even small work related changes.

Clmt's allegations are fully credible.

Medical opinion from clmt's treating source is consistent with other information in file and is given controlling weight.This is esspecially in light of the amount of time that Dr. tandy has seen claimant and the detailed nature of his opinion.

Clmt is unable to carry out even unskilled tasks in a competitive setting due to the limitations described above.

This narrative appears in the "Functional Capacity Assessment" section of the agency form that Dr. Neville filled out; it elaborates on the doctor's "checkbox" answers to a series of questions on the preceding two pages. The directions on the form call for those questions to be answered based on "the evidence in file." As far as the record shows, Dr. Neville never personally interviewed or examined Gossett. In his role as reviewing official, Dr. Neville granted reconsideration, found Gossett disabled, and awarded benefits based on his second application on July 28, 2010.

As of that date, the Appeals Council still had Gossett's initial application under consideration. For that reason, the effective date of his benefits under the *second* application was the day after the ALJ's adverse ruling, January 28, 2010. See *SSA Hearings, Appeals and Litigation Law Manual* § I-5-3-17(I)(A), 2001 WL 34096370. The Appeals Council resolved his appeal from the adverse ruling on the first application in an order issued December 9, 2010, denying Gossett's appeal. During the time the appeal was pending, Gossett never sent Dr. Neville's evaluation to the Appeals Council, as he had done with Dr. Tandy's letter and new assessment of his mental residual functional capacity. The reason for this omission was straightforward, according to Gossett: no one had given him Dr. Neville's opinion. The state agency had simply notified him that his second application was granted without explaining why, and Gossett had not asked for more information. But the Appeals Council should have received Dr. Neville's report anyway: by regulation, the state agency itself was supposed to forward Dr. Neville's favorable narrative and decision to the Appeals Council, which in turn was required to consider the information in reaching its decision on Gossett's

pending appeal. See POMS DI 12045.027(D)(1)(b), (2)(b); *SSA Hearings, Appeals and Litigation Law Manual* § I-5-3-17(I)(B). Either the state agency failed to comply with that mandate, or the Appeals Council refused (silently) to consider the information. All we know is that the notice of its adverse ruling lists the materials from Dr. Tandy, but nothing from Dr. Neville, as "additional evidence" evaluated in deciding Gossett's appeal.

Gossett responded to the Appeals Council's decision by filing a complaint in federal court arguing that the Commissioner's decision is not supported by substantial evidence. He did not argue that the Appeals Council had erred by failing to consider Dr. Neville's favorable determination; instead, he asked the district court to exercise its authority under "sentence six" of 42 U.S.C. § 405(g) to order the Commissioner to reopen the proceedings and reevaluate his *first* application in light of the Commissioner's decision on the *second* application. Sentence six provides that the district court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

After this suit was underway, Gossett asked to see the file containing Dr. Neville's opinion. In a scheduling order the district court suggested that Gossett should "submit a brief in support of the complaint and . . . file a separate motion for the remand of this action for consideration of new evidence." But Gossett, now armed with Dr. Neville's opinion, submitted a single brief (to which the opinion was attached) discussing only the sentence six issue. The district court refused to grant the remand. It accepted the Commissioner's contention that Dr. Neville's assessment was not material to Gossett's first application because the doctor had checked a box indicating that his evaluation was "current." This meant, the Commissioner said, that the assessment did not address Gossett's capacity to work during the period covered by his first application. The court agreed with this position. It noted that Dr. Neville, whose narrative is written in the present tense, discusses Dr. Tandy's treatment without identifying documents or dates. The judge acknowledged that Dr. Neville might have been relying on records that predate the ALJ's ruling, but she declined to base her decision on speculation. Instead, she held, "Dr. Neville's opinion speaks only to Mr. Gossett's limitations and abilities at the time of his second application" and was unlikely to change the ALJ's opinion.

Notably, the Commissioner did not argue that Dr. Neville's opinion was also not eligible for a sentence six remand because it was not "new." The court wondered about this point in footnote 1 of its opinion and expressed "serious doubts" on the question whether this was indeed "new" evidence. But the footnote began with the statement that "the parties do not contest the fact that Dr. Neville's Mental RFC assessment qualifies as 'new'

pursuant to 42 U.S.C. § 405(g)," and on that basis it declined to reach the newness issue. Before this court as well, the Commissioner confines her argument to the proposition that Dr. Neville's opinion was not material. She has therefore at least forfeited, if not waived, the right to assert the failure to meet the requirement that evidence be "new" as an alternate ground on which to support the decision. Similarly, neither the court nor the agency has addressed the question whether substantial evidence supports the existing decision. This is appropriate, since if a sentence six remand were to occur, the overall record might cause the agency to change its mind, even if reasonable people could have come out either way both times.

## II

A sentence six remand is permitted when a claimant shows that there is evidence that is both new (conceded here) and material, and he also can demonstrate good cause for not presenting that evidence to the ALJ. 42 U.S.C. § 405(g); *Schmidt v. Barnhart,* 395 F.3d 737, 741-42 (7th Cir. 2005). Evidence is material if there is a reasonable probability that its consideration would have changed the ALJ's decision. *Schmidt,* 395 F.3d at 742; *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Here, the Commissioner first argues that Dr. Neville's assessment is immaterial because it does not relate to the time covered by Gossett's first application. She concedes that the assessment refers to Dr. Tandy's reports, but she suggests that Dr. Neville might have been relying on documents prepared by Dr. Tandy after the ALJ's decision.

But that is pure speculation. It is true, as an abstract matter, that evidence must "relate to the claimant's condition during the relevant time period encompassed by the disability application under review," see *Johnson v. Apfel,* 191 F.3d 770, 776 (7th Cir. 1991), but we have no trouble concluding that Dr. Neville's assessment meets that standard. He did not limit himself strictly to the time following the ALJ's decision, and he appears to have relied solely on evidence that was before the ALJ. On the other hand, unlike the situation in *Jens v. Barnhart,* 347 F.3d 209, 214 (7th Cir. 2003), Dr. Neville was "provid[ing] a new perspective on the information that was available" to the ALJ. Dr. Neville's assessment plainly took all of Dr. Tandy's views into account, not (as the Commissioner suggests) just Dr. Tandy's post-decision submissions to the Appeals Council. In fact, the Commissioner has never asserted that either Gossett or the Appeals Council shared Dr. Tandy's final reports with Dr. Neville or otherwise made them part of the state administrative record in the second case. Moreover, Dr. Neville's evaluation would be material even if he had received and relied on those submissions: Dr. Tandy's letter and his post-decision assessment of Gossett's mental state were prepared in support of Gossett's appeal from the denial of his first application. While the documents themselves post-date the ALJ's

decision, their description of Gossett's condition relates to the period covered by the first application.

We also find that there is at least a reasonable probability that Dr. Neville's opinion could lead to a different conclusion by the ALJ. See *Schmidt,* 395 F.3d at 742. The district court thought that the brevity of the assessment and the fact that Dr. Neville had not personally examined Gossett detracted from the force of his opinion, but that was for the ALJ to decide. One agency – the Indiana Disability Determination Bureau – had already relied on that very assessment to grant Gossett benefits, despite the earlier opinions from Drs. Faidley, Larsen, and Gange. The Commissioner has left unchallenged the state agency's decision on Gossett's second application, and it is reasonable to think that the ALJ might have the same reaction to Dr. Neville's opinion that the Indiana agency had, which led to a result to which the Commissioner has at least acquiesced. Despite the contrary opinions in the record, it is far from clear that the ALJ would conclude that Gossett is not disabled when she has two medical opinions (one from a treating physician and the other from a disinterested party), rather than one, stating that he is.

### III

In summary, we conclude that Dr. Neville's assessment, fairly read, did cover the period relevant to Gossett's first application, and there is a reasonable probability that it could cause the ALJ to change her conclusion. We therefore REVERSE and REMAND to the district court with instructions to order a "sentence six" remand to the Commissioner. The Commissioner must then evaluate the new evidence and conduct whatever further proceedings are then required. See, *e.g., Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991).