Daniel C. DUNN, Plaintiff,

v.

Carolyn W. COLVIN [1], Commissioner of Social Security, Defendant.

Case No. 6:12–cv–00021.

United States District Court,
W.D. Virginia,
Lynchburg Division.

Sept. 19, 2013.

---

1. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

632

Amy Hansen Geddes, Osterhoudt Prillaman Natt Helscher Yost Maxwell & Ferguson, Roanoke, VA, for Plaintiff.

Charles John Kawas, Office of General Counsel, SSA, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

NORMAN K. MOON, District Judge.

This matter is before the Court on the parties' cross Motions for Summary Judgment (docket nos. 11 and 13), the Report & Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 17, hereinafter "R & R"), and Plaintiff's Objections to the R & R (docket no. 19). Pursuant to Standing Order 2011–17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his R & R, advising this Court to deny Plaintiff's Motion for Summary Judgment, and grant the Commissioner's Motion for Summary Judgment. Plaintiff

timely filed his Objections, obligating the Court to undertake a de novo review of those portions of the R & R to which objections were made. *See* 28 U.S.C. § 636(b)(1)(B); *Farmer v. McBride,* 177 Fed.Appx. 327, 330 (4th Cir.2006). For the following reasons, I will overrule Plaintiff's Objections and adopt the Magistrate Judge's R & R in full.

## I. BACKGROUND

On February 2, 2010, Plaintiff Daniel C. Dunn ("Plaintiff") protectively filed an application for Supplemental Security Income ("SSI") payments under the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383f To receive SSI benefits, Plaintiff must show his disability began on or before the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501.

Plaintiff was born on March 30, 1957, and was "closely approaching advanced age" on his alleged onset date. R. 26; 20 C.F.R. § 416.933(c). Plaintiff claims his disability began on March 30, 2006, due to problems with his legs (from peripheral artery disease), lower back, and memory. R. 113. Plaintiff reported that, during the relevant period of his alleged disability, he has spent much of his time sitting on the couch all day, washing dishes, and sweeping the floor. Plaintiff noted showering every three days and needing reminders to change his clothes, along with assistance preparing meals and medication. R. 139–41. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### A. The ALJ's Decision

The state agency denied Plaintiff's application at the initial and reconsideration levels of administrative review (R. 44, 53), and on May 11, 2011, Administrative Law Judge ("ALJ") Marc Mates held a hearing to consider Plaintiff's disability claim. R. 22. Plaintiff was represented by counsel at the hearing. R. 10.

Determining disability, and thus eligibility for Social Security benefits, involves a five-step inquiry. *Walls v. Barnhart,* 296 F.3d 287, 290 (4th Cir.2002). In this process, the Commissioner asks whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) the claimant is able to perform his past relevant work; and (5) the claimant can perform other specific types of work. *Johnson v. Barnhart,* 434 F.3d 650, 653 n. 1 (4th Cir.2005) (citing 20 C.F.R. § 404.1520). The claimant has the burden of production and proof in Steps 1–4. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992) (per curiam). At Step 5, however, the burden shifts to the Commissioner "to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[is] age, education, and work experience." *Id.* If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found Plaintiff suffers from the severe impairments of peripheral artery disease ("PAD") status post percutaneous translimunal angioplasty and stent placement, non-dominant left shoulder difficulty, and history of substance dependence. R. 12. He found these impairments, both individually and in combination, do not meet or medically equal a listed impairment. R. 12.

Plaintiff has an eighth-grade education level (R. 26), and worked as a painter and carpenter until 1989, receiving income for work through 1996. R. 107–09, 119. The

ALJ found Plaintiff was incapable of returning to his past relevant work. R. 16. But the ALJ also found Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with occasional pushing and pulling with his non-dominant left arm. The ALJ noted Plaintiff should avoid concentrated exposure to hazards. R. 13.

Plaintiff requested review from the Appeals Council and submitted medical records from Bedford Memorial Hospital and Lynchburg General Hospital documenting a second angioplasty and stent placement on September 27, 2011, twenty days after the ALJ's issued his decision. R. 4. On March 12, 2012, the Appeals Council made Plaintiff's newly submitted evidence part of the record and denied Plaintiff's request for review. R. 4. The ALJ's decision thus became the Commissioner's final decision under 42 U.S.C. § 405(g) on March 12, 2012. R. 1. Plaintiff filed the instant suit on May 7, 2012, seeking judicial review of the Commissioner's final decision.

### B. The Summary Judgment Motions

In his November 5, 2012 memorandum, Plaintiff contends the ALJ gave insufficient weight to the opinion of his treating physician, Dr. O'Brien. Pl.'s Mem. in Supp. 9–11. The ALJ gave Dr. O'Brien's RFC assessment of Plaintiff partial weight. He held the doctor's findings that Plaintiff would have to lie down one hour in an eight-hour workday and would likely be absent from work twice a month were unsupported by medical evidence in the record. R. 15, 472. Plaintiff also objects that the ALJ improperly evaluated his credibility, failing to credit Plaintiff's testimony that his limitations are so severe as to render him disabled. Plaintiff asserts his testimony about his limitations is supported by medical evidence on the record and was improperly analyzed by the ALJ.

Pl.'s Mem. in Supp. 9–15. Should the Court disagree with Plaintiff on the above arguments, Plaintiff argues in the alternative that the evidence he presented to the Appeals Council is new and material and warrants remand to the Commissioner for reconsideration. *Id.* at 13–15.

In response, Defendant argues the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence. Def.'s Mem. in Supp. 6–7. Defendant also states the ALJ properly considered and weighed the evidence from Dr. O'Brien, Plaintiff's treating physician. Dr. O'Brien's opinion that Plaintiff would have to lie down for one hour of an eight-hour workday and would be absent from work twice a month was unsupported by medical evidence and in fact contradicted by Dr. O'Brien's own prognoses and examinations, according to Defendant. *Id.* at 7–8. Defendant argues the ALJ properly disregarded that portion of Dr. O'Brien's opinion, because it contradicted other ample evidence in the record indicating Plaintiff could perform low-stress, light work. *Id.*

Defendant further argues the ALJ's credibility findings are properly supported by substantial evidence. *Id.* at 8–10. The ALJ relied on multiple factors in disregarding Plaintiff's assertions that the intensity, persistence, and limiting effects of his symptoms precluded him from performing work within the ALJ's RFC. *Id.* at 8–9. These included "inconsistencies between Plaintiff's testimony and the function report he completed previously," the records showing Plaintiff failed to work for thirteen years prior to filing for benefits, medical records documenting improvement, mobility, and a stable condition after angioplasty, Plaintiff's alcohol abuse, the conservativeness of Plaintiff's treatment by medication, and his normal neurological results. *Id.* at 9–10.

Finally, Defendant contends the evidence Plaintiff submitted to the Appeals Council—that he underwent a second angioplasty after the ALJ's decision—does not warrant remand, as it does not relate to the time period at issue before the ALJ and is not material. *Id.* at 10–12.

## C. The Magistrate Judge's Report and Recommendation

Magistrate Judge Robert S. Ballou recommends denying Plaintiff's motion for summary judgment, and granting the Commissioner's motion. In his R & R, the Magistrate Judge addressed Plaintiff's contention that the ALJ erred in two regards: (1) by improperly discrediting a portion of Dr. O'Brien's opinion; and (2) by discrediting Plaintiff's testimony that he suffers from severe and disabling pain.

First, the Magistrate Judge noted that while the ALJ considered Dr. O'Brien's opinion, he gave it partial weight, finding a portion of it unsupported by the medical evidence on record. R & R 646–48. Substantial evidence supports that decision, the Magistrate Judge found, because after his angioplasty, Plaintiff showed improvement, normal neurological test results, and remained stable and without fatigue or impairments that would require the limitations Dr. O'Brien imposed. *Id.* at 647–48.

Second, the Magistrate Judge found there is substantial evidence supporting the ALJ's decision not to assign substantial credibility to Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments. *Id.* at 648–49. The Magistrate Judge found that Plaintiff's medical records do not provide an evidentiary basis to corroborate his allegations that his pain is so severe that he is unable to perform the range of light work of which the ALJ's RFC found him capable. *Id.* The Magistrate Judge noted that Plaintiff's treatment records reflect "a condition continuously improving after the angioplasty and stent placement," including doctors' assessments and Plaintiff's own statements at appointments. *Id.* at 648–49. Significantly, the Magistrate Judge emphasized Plaintiff's abuse of tobacco and alcohol during the relevant period, causing withdrawal-induced seizures, and his failure to work for thirteen years before applying for benefits. *Id.* at 648–49. The Magistrate Judge noted Plaintiff's broad allegation that medical evidence in fact "corroborated" his testimony regarding his limitations, finding Plaintiff essentially requested the court to re-weigh and re-analyze the evidence. *Id.* at 649. The Magistrate Judge emphasized it was not his role to do so, and found substantial evidence in the record to support the ALJ's credibility determinations. *Id.*

Lastly, the Magistrate Judge considered Plaintiff's evidence, submitted to the Appeals Council, that he underwent a second angioplasty and stent placement twenty days after the ALJ's decision. The Magistrate Judge emphasized that he considered this evidence as part of the whole record before him, but found it did not require remand because it neither related to the relevant time period nor proved material. *Id.* at 649–50. The R & R emphasizes Plaintiff's steady improvement before the ALJ's decision, the lack of evidence relating the second procedures to some decline before the ALJ's decision, and the lack of additional limitations and restrictions placed on Plaintiff after the second angioplasty. The Magistrate Judge found Plaintiff's new evidence unlikely to change the case's outcome and thus not warranting remand. *Id.* at 650–51.

Plaintiff timely filed Objections to the R & R on August 19, 2013, arguing the Magistrate Judge erred in finding substantial evidence to support the Commissioner's decision not to give greater weight to Dr.

O'Brien's opinion. Pl.'s Objections 1–3. Plaintiff claims the ALJ did not sufficiently explain his decision to disregard portions of Dr. O'Brien's opinion and the Magistrate Judge improperly bolstered that analysis. *Id.* at 2–3. Plaintiff also contends the Magistrate Judge erred in concluding substantial evidence supports the ALJ's determination that Plaintiff's statements concerning his limitations were not fully credible and are inconsistent with the medical evidence on record. *Id.* at 3. Finally, Plaintiff objects to the Magistrate Judge's finding that the new evidence he submitted to the Appeals Council neither relates to the relevant time period, nor proves material. *Id.* at 4. Plaintiff claims the second hospitalization and angioplasty show Plaintiff's condition was not stable and improving, as the ALJ found, and substantiates Plaintiff's descriptions of continuing pain and weakness. *Id.* Thus, Plaintiff argues the new evidence is material and warrants remand to the Commissioner for consideration. *Id.*

## II. STANDARD OF REVIEW

A reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996). Substantial evidence is not a large or considerable amount of evidence. *Pierce v. Underwood,* 487 U.S. 552, 555, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Rather, it comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966).

In determining whether the ALJ's decision was supported by substantial evidence, a reviewing court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig,* 76 F.3d at 589 (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quoting *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987)). "Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Thus, even if the court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch,* 437 F.2d 73, 74 (4th Cir.1971). Ultimately, the issue before this Court is not whether Plaintiff is disabled, but whether the ALJ's determination is reinforced by substantial evidence, and whether it was reached through correct application of the law. *Craig,* 76 F.3d at 589.

Since the Plaintiff submitted additional evidence to the Appeals Council following the ALJ's decision, and the Appeals Council incorporated that evidence into the administrative record, this Court has included that evidence in its assessment of whether the Commissioner's decision is supported by substantial evidence. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir.1991).

## III. DISCUSSION

### A. ALJ's Consideration of the Treating Physician's Opinion

Plaintiff argues that the Magistrate Judge erred in finding substantial

evidence to support the Commissioner's decision to give only partial weight to Dr. O'Brien's treating-physician opinion. Courts give controlling weight to the medical opinions of a treating physician, so long as they are supported by medically acceptable clinical and laboratory diagnostic techniques, and so long as they are not inconsistent with other substantial evidence in the case record. *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001) (citing 20 C.F.R. § 416.927). Where a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig,* 76 F.3d at 590. If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must provide specific reasons for the weight given to that physician's medical opinion, supported by evidence in the case record. *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

▮ I agree with the Magistrate Judge that the ALJ's decision to give Dr. O'Brien's opinion only partial weight is supported by substantial evidence, for two reasons. First, in general, the limitations it suggests conflict with other medical evidence in the record indicating Plaintiff can engage in a wider range of light work. Second, in particular, its assessment that Plaintiff would need to lie down one hour in an eight-hour workday is not linked to a medically determinable physical or mental impairment that can reasonably be expected to produce such a limitation.

The ALJ disregarded only Dr. O'Brien's limitations, in his November 2010 assessment, that Plaintiff rest one hour each workday and absent himself from work about twice a month, finding these opinions "unsupported" by the medical record. R. 15. The ALJ noted Dr. O'Brien indicated a "reasonably good prognosis from PAD standpoint" for Plaintiff and found

Plaintiff's "dyspnea/fatigue [to be] of unclear etiology." *Id.* (internal quotation marks omitted). Further, the ALJ found "[n]o other treating or evaluating medical source suggested limitations beyond those" in the ALJ's RFC assessment: namely, light work with no more than occasional left arm pushing/pulling and no concentrated exposure to hazards. *Id.* Finally, the ALJ specified that in forming his conclusions, he considered Dr. O'Brien's treating relationship with Plaintiff, including its length, frequency, nature, and extent; whether Dr. O'Brien's November 2010 opinions were supported by medical signs and laboratory findings and their consistency with the record as a whole; and many other factors mandated by the regulations. *Id.*

Although brief, I find the ALJ's explanation of his reasons for disregarding Dr. O'Brien's limitations sufficiently specific to make clear for this Court "the weight [the ALJ] gave to [Dr. O'Brien's] medical opinion and the reasons for that weight." *See* SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996). I also find substantial evidence in the record to support disregarding Dr. O'Brien's limitations that Plaintiff rest one hour each day and take a couple days off work each month.

Dr. O'Brien's opinion Plaintiff would need to rest one hour each workday was properly disregarded because he failed to link the symptom driving the limitation—fatigue—to a medically determinable physical or mental impairment that can reasonably be expected to produce such a limitation. Dr. O'Brien checked the reason for his rest limitation as "fatigue arising from a documented medical impairment," but on the same RFC noted that Plaintiff's fatigue was "of unclear etiology." R. 473, 476.

Furthermore, in that same assessment Dr. O'Brien found no marked limitation of

physical activity for Plaintiff, as would be demonstrated by fatigue, palpitation, and dyspnea. Instead, the doctor indicated Plaintiff suffers only "mild—moderate limitation." R. 473. This level of limitation led Dr. O'Brien to conclude Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, would not need to alternate postures during the workday, and could sit over six hours, and stand/walk over six hours in an eight-hour workday (with over three hours each of sitting and standing/walking continuously). The doctor wrote that fatigue was a symptom of Plaintiff's PAD, but found he had a "reasonably good prognosis from PAD standpoint." R. 474. The state agency medical sources only prescribed limitations on Plaintiff's pushing/pulling with his left arm and concentrated exposure to hazards. Combined with Dr. O'Brien's other opinions and the state agency medical sources' prescribed limitations, the ALJ properly found Dr. O'Brien's suggestion the Plaintiff should rest one hour per work day in conflict with other medical evidence on the record, and thus unsupported.

For the same reasons given above, Dr. O'Brien's indication that Plaintiff would likely absent himself from work approximately twice per month due to his impairments and treatment are properly disregarded. Neither the state agency medical sources' opinions nor Dr. O'Brien's own prognosis for Plaintiff support this limitation. According to both sources, Plaintiff's condition had a reasonably good prognosis and his limitations were mild to moderate, mostly concerning his exposure to concentrated hazards and pushing/pulling with his left arm. The ALJ's decision to disregard this portion of Dr. O'Brien's opinion is supported by substantial evidence, as enumerated in the paragraph preceding this one.

## B. The ALJ's Credibility Assessment

Plaintiff also contends the Magistrate Judge erred in concluding substantial evidence supports the ALJ's determination that Plaintiff's statements concerning his limitations were not fully credible and are inconsistent with the medical evidence on record. Pl.'s Objections 3. Plaintiff alleged his impairments caused a level of pain that barred him from substantial gainful activity.

It is not the role of this Court to determine whether Plaintiff's testimony was fully credible. *Craig,* 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence. *Id.* The ALJ determines whether a claimant is disabled by pain by a two-step process. *Id.* at 594; *see* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). First, the ALJ must find "objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities, and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig,* 76 F.3d at 594 (quotations and emphasis omitted). If such evidence is found, the ALJ must then evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affect[ ] her ability to work." *Id.* at 595. Among other factors, when evaluating the claimant's credibility the ALJ should consider all evidence in the record, including "[d]iagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists." SSR 96–7p, 1996 WL 374186, at *5. The ALJ's determination "must contain specific reasons" that "make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements

and the reasons for that weight." *Id.* at *4.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible, to the extent that they were inconsistent with the ALJ's RFC assessment. R. 14. Plaintiff objects to the Magistrate Judge's finding that the record contains substantial evidence to support the ALJ's conclusion.

Significantly, the ALJ noted that Plaintiff's condition after his angioplasty and stent placement in February 2010 "was treated conservatively with some success." R. 15. Shortly after the angioplasty and stent placement, Plaintiff's condition improved. By April and May 2010, as the ALJ indicated, Dr. O'Brien found Plaintiff was stable with no recurrent or lifestyle limiting claudication and no evidence of tissue breakdown. R. 14. By July 2010, other than a burning in Plaintiff's right thigh that Percocet helped with, Plaintiff self-reported his right leg was "great." R. 14–15. Plaintiff reported no chest pain, shortness of breath, syncope, or edema, but did report neuropathic pain, which was treated by Neurontin. R. 15. Dr. O'Brien found complaints of left leg pain atypical for claudication and more suggestive of a neuropathic source in October 2010 and referred Plaintiff to a neurologist. *Id.* That neurologist found no focal deficit to suggest a severe myopathy. *Id.* As the ALJ found, Plaintiff's condition was treated conservatively and with some success. Medication, injections, and exercises helped to alleviate Plaintiff's symptoms, and his condition was described as improving with a reasonably good prognosis, by both Plaintiff and his physicians. R. 324, 347, 352, 357, 384, 388.

Furthermore, while Plaintiff describes his limitations as preventing him from engaging in substantial gainful activity, his behavior lends credence to the ALJ's credibility findings. Plaintiff had not worked for thirteen years prior to filing his application for benefits. R. 14. Additionally, he did not attribute sufficient gravity to his doctors' treatment recommendations to quit smoking and abusing alcohol, as his doctors repeatedly admonished. Dunn experienced alcohol withdrawal-induced seizures in December 2009 but continuously reported drinking six to nine beers about six times per week after that incident and throughout his period of treatment. R. 201–13, 316, 320, 325, 331, 352, 357, 385, 389, 393, 397, 437, 441, 445, 466, 477, 488, 492.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility, and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler,* 739 F.2d 987, 989–90 (4th Cir.1984). In considering the record, I agree with the Magistrate Judge's finding that there is substantial evidence to support the ALJ's determination that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms was not credible, to the extent that it was inconsistent with the ALJ's RFC assessment.

### C. ADDITIONAL EVIDENCE

Plaintiff further objects to the Magistrate Judge's finding that the new evidence he submitted to the Appeals Council neither relates to the relevant time period, nor proves material. Pl.'s Objections 4. Plaintiff claims a second hospitalization and angioplasty on September 27, 2011 show Plaintiff's condition was not sta-

ble and improving, as the ALJ found, and substantiates Plaintiff's descriptions of continuing pain and weakness. *Id.*

 In the Fourth Circuit, a claimant can only obtain a remand based on additional evidence submitted to the Appeals Council after the ALJ's decision if that evidence is new and material, relates to the period on or before the date of the ALJ's decision, and it is reasonably likely the new evidence would have changed the outcome of the ALJ's decision. *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991).

The additional evidence Plaintiff provides does not relate to the period on or before the date of the ALJ's decision. Although Plaintiff describes the cause of the hospitalization as a "severe 80% lesion proximal to the stent and severe diffuse restenosis in the external iliac and common iliac stents," as the Magistrate Judge found, he does not sufficiently relate these new procedures to decline occurring before the ALJ's decision. *Id.* As described at length here, substantial evidence on the record indicates Plaintiff improved and was stable following his first angioplasty, all the way through the period of the ALJ's decision. Neither Plaintiff nor the medical records relate his emergency room visit, angioplasty, and stent placement twenty days after the ALJ's decision to his stable and improving condition before the decision.

Even if the record sufficiently made such a link, Plaintiff's new evidence does not conflict with the evidence before the ALJ and would not likely change the outcome of the Commissioner's decision. Thus, it does not warrant remand. The Appeals Council considered this evidence and found it provided no "basis for changing the Administrative Law Judge's decision." R. 2. I agree, but my analysis proceeds down a somewhat different path.

As the reviewing court, this Court is tasked with including any new evidence in its review of the entire record, and determining based on old and new evidence whether the Commissioner's decision is based on substantial evidence. *Wilkins,* 953 F.2d at 96. Yet this Court is not to resolve conflicts in the evidence or re-weigh that evidence—that is the province of the ALJ. *See Smith v. Chater,* 99 F.3d 635, 638 (4th Cir.1996). Therefore, as this Court reviews this new evidence in the context of the whole record to determine whether it is material—whether it has a reasonable probability of changing the outcome of the case—it must avoid resolving conflicts in the evidence, or re-weighing it. Accordingly, this Court will ask, as have other courts in this district, whether the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. *See, e.g., Bryant v. Barnhart,* No. 6:04–cv–00017, 2005 WL 1804423, at *5 (W.D.Va. Jan. 21, 2005); If the evidence does any of these things, it possesses a reasonable probability of changing the outcome of the case and the case is properly remanded to the Commissioner for reconsideration. If there are no such conflicts, I need not remand. *See Riley v. Apfel,* 88 F.Supp.2d 572, 579–80 (W.D.Va.2000).

Plaintiff's new evidence is not contradictory to the evidence before the ALJ, does not present material competing testimony, and does not call into doubt any decision grounded in the prior medical reports. Plaintiff obtained the second angioplasty and stent placement after he arrived at the emergency room on September 24, 2011, complaining of lower leg pain and painful, blue-colored toes. R. 564. Doctors diagnosed him with PAD and intermittent claudication then discharged him in stable condition. R. 570. After his

second angioplasty and stent placement in his right common and iliac arteries on September 27, 2011, Plaintiff was able to ambulate again and no more restrictive limitations than those before the ALJ were imposed. R. 553–61.

■ As the Magistrate Judge pointed out in his R & R, if a social security claimant develops additional impairments or those impairments worsen after his first application for benefits, the proper recourse is to submit a new application. *See Getch v. Astrue,* 539 F.3d 473, 484 (7th Cir.2008); *Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir.2005); *cf. Reichard v. Barnhart,* 285 F.Supp.2d 728, 734 (S.D.W.Va.2003) (finding remand for reconsideration warranted where same ALJ found claimant disabled upon second application for benefits, one week after finding claimant was not disabled on first application for benefits, considering much of the same evidence); *Goode v. Astrue,* No. 6:09–cv–00045, 2011 WL 926855, at *7–9 (W.D.Va. Feb. 25, 2011) (similar). Plaintiff did no such thing here. Plaintiff provides no link between the old evidence before the ALJ and the setback that caused the second angioplasty and stent replacement. Given that Plaintiff has no more restrictive limitations than those in place when the ALJ examined his case and his condition appears stable, this new evidence does not conflict with the evidence before the ALJ. It does not have a reasonable probability of changing the outcome of Plaintiff's case and does not warrant remand.

## IV. CONCLUSION

After undertaking a de novo review of those portions of the R & R to which Plaintiff objected, I find that substantial evidence supports the ALJ's conclusions. Accordingly, I will enter an Order overruling Plaintiff's Objections, adopting the Magistrate Judge's R & R in full, granting the Commissioner's Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing this action and striking it from the active docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

## ORDER

For the reasons set forth in the accompanying memorandum opinion, the Court hereby overrules Plaintiff's Objections to the Report and Recommendation of United States Magistrate Judge Robert S. Ballou (docket no. 19); adopts Judge Ballou's Report and Recommendations (docket no. 17) in full; grants the Commissioner's Motion for Summary Judgment (docket no. 13); denies Plaintiff's Motion for Summary Judgment (docket no. 11); and dismisses this action, striking it from the Court's active docket.

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

## *REPORT AND RECOMMENDATION*

ROBERT S. BALLOU, United States Magistrate Judge.

Plaintiff Daniel Clinton Dunn ("Dunn") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 1381–1383f. Specifically, Dunn alleges that the Commissioner did not af-

644

ford appropriate weight to the opinion of his treating physician, improperly evaluated his credibility, and that the new evidence presented to the Appeals Council warrants remand.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision, and that remand is not warranted based on the additional evidence submitted to the Appeals Council. Accordingly, I **RECOMMEND DENYING** Dunn's Motion for Summary Judgment, (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 13).

### STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir.2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990).

The plaintiff bears the burden of proving that he is disabled within the meaning of the Act. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir.1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. *See* 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir.2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[2] (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n. 1 (4th Cir.2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell* 461 U.S. 458, 460–62, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The inquiry ceases if the Commissioner finds the claimant dis-

**2.** A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

abled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir.1975). In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. *Wilkins v. Secretary, Dep't of Health and Human Servs.*, 953 F.2d 93, 95–96 (4th Cir.1991).

## STATEMENT OF FACTS

### Social and Vocational History

Dunn was born on March 30, 1957, (Administrative Record, hereinafter "R.", 26, 102), and was "closely approaching advanced age" on his alleged onset date. R. at 26; 20 C.F.R. § 416.933(c). To receive SSI benefits, Dunn must establish that his disability began on or before the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501. Dunn has an eighth grade education level. R. 26. He last worked as a carpenter in 1989. R. 119. Dunn reported that during the relevant period, he sat on the couch all day, washed dishes, swept the floor, showered every three days, needed reminders to change his clothes, and needed assistance preparing his meals and medication. R. 139–41.

### Claim History

Dunn protectively filed his application for SSI on February 2, 2010, claiming that his disability began on March 30, 2006. R. 113. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 44, 53. On May 11, 2011, Administrative Law Judge ("ALJ") Marc Mates held a hearing to consider Dunn's disability claim. R. 22. Dunn was represented by counsel at the hearing. R. 10.

On September 7, 2011, the ALJ entered his decision denying Dunn's claims. R. 10–17. The ALJ found that Dunn suffered from the severe impairments of peripheral artery disease ("PAD") status post percutaneous translimunal angioplasty and stent replacement, non-dominant left shoulder difficulty, and history of substance dependence. R. 12. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 12. The ALJ further found that Dunn retained the residual functional capacity ("RFC") to perform light work, with occasional pushing and pulling with his non-dominant left arm, and that he should avoid concentrated exposure to hazards. R. 13. Based on this RFC, Dunn was incapable of returning to his past relevant work, (R. 16), but could perform the requirements of representative occupations at the light exertional level, which exist in significant numbers in the national economy. R. 17.

Dunn submitted a request to review to the Appeals Council, along with medical records from Bedford Memorial Hospital and Lynchburg General Hospital. R. 4. The Appeals Council made this evidence part of the record. R. 4. On March 12, 2012, the Appeals Council denied Dunn's request for a review of the ALJ's decision, thereby rendering the decision of the ALJ

the final decision of the Commissioner. R. 1. This appeal followed.

## ANALYSIS

### Treating Physician Opinion

Dunn first alleges that the ALJ erred by giving the opinion of his treating physician, Peter O'Brien, M.D., only partial weight. On November 1, 2010, Dr. O'Brien completed a Cardiac Residual Functioning Capacity Questionnaire, and found that Dunn could perform light work, but would need to lie down one hour in an eight hour workday, and would likely be absent from work twice a month. R. 472. The ALJ gave Dr. O'Brien's assessment partial weight; finding the restrictions regarding lying down and missing work to be unsupported in the record. R. 15.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. § 416.927(c)(2); Saul v. Astrue, 2011 WL 1229781 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors

may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, 2010 WL 6621693 (E.D.Va. Dec. 29, 2010).

In this case, the ALJ's decision to give Dr. O'Brien's opinion partial weight is supported by substantial evidence. The relevant medical evidence is briefly summarized, as follows:

In January 2010, a magnetic resonance angiogram (MRA) of the arteries in Dunn's lower extremities indicated that vascular disease was present, mostly in the common iliac arteries bilaterally. R. 262. On February 11, 2010, Dunn required an angiography, with placement of a stent in the right common and external iliac arteries. R. 272–74, 297–99, 480–82. On February 19, 2010, Dunn followed up with Brian Schietinger, M.D., and reported left groin discomfort. R. 324. Dunn also reported that his lower extremities and feet were much improved post-surgery, and that he had no discomfort upon walking or exertion R. 324. On February 26, 2010, Dunn again followed up with Dr. O'Brien, and noted that his groin discomfort had improved, and he had no claudication. R. 315, 384. He reported difficulty urinating, and antibiotics were prescribed to treat a fever and high white blood cell count not related to his surgery. R. 316–17, 385–86, 437–38.

On March 10, 2010, Dunn visited the urgent care clinic complaining of burning pain along his right thigh. R. 388. Dunn also noted that his right leg was doing "great." R. 388. He was prescribed Neurontin and Vicodin for pain. R. 391. On April 1, 2010, Dunn noted that his claudication had improved, but he was experiencing neuropathic pain in his left thigh. R. 347. Dunn also noticed exertional chest pain and shortness of breath now that he was walking more. R. 347. Dr. O'Brien determined that Dunn's PAD was stable

with no recurrent or lifestyle limiting claudication and no evidence of tissue breakdown. R. 349.

On May 5, 2010, Dr. O'Brien noted that Dunn progress was fair since his last visit. Dunn still complained of some hip pain, and limited range of motion and pain in his left shoulder. R. 356–59. Dr. O'Brien again noted that Dunn's PAD was stable with no recurrent or lifestyle limiting claudication and no evidence of tissue breakdown. R. 359. Dr. O'Brien referred Dunn to Peter Caprise, M.D., for his shoulder pain.

On May 27, 2010, state agency physician Brian Strain, M.D., reviewed the record and found that Dunn could perform light exertional work, but had a limited ability to push and/or pull with his left upper extremity, and should avoid concentrated exposure to hazards. R. 153–54. On August 16, 2010, Joseph Duckwall, M.D., reviewed the record and reached the same conclusion as Dr. Strain. R. 184–85.

On June 11, 2010, Dr. Caprise diagnosed impingement syndrome in Dunn's left shoulder and injected lidocaine. R. 419–420. Dr. Caprise recommended home exercise in lieu of physical therapy due to Dunn's lack of insurance. R. 420.

On October 4, 2010, Dunn returned to Dr. O'Brien complaining of pain in his left leg, fatigue and shortness of breath, and left shoulder pain. R. 465. Dr. O'Brien noted that Dunn's PAD was stable, ordered pulmonary function tests, and referred Dunn to a neurologist. R. 467. On October 28, 2010, Morris E. McCrary, III, M.D., evaluated Dunn and noted that his neurological examination was "fairly normal" with no focal deficits, which suggested radiculitis rather than radiculopathy. R. 497–98.

On November 1, 2010, Dr. O'Brien completed a Cardiac Residual Functional Capacity Questionnaire indicating that Dunn's PAD resulted in a mild to moderate limitation in activity. R. 472–78. Dr. O'Brien found that Dunn could perform low stress jobs, and could perform the exertional demands of light work. Dr. O'Brien also found that Dunn's fatigue would require him to lie down for one hour in an eight hour workday, and miss work about twice a month. R. 472–78.

Based on the evidence set forth above, the ALJ determined that Dunn is capable of performing light work, except that he can no more than occasionally push and/or pull with his left arm, and must avoid concentrated exposure to hazards. R. 13. The ALJ carefully considered the record, Dr. O'Brien's opinion, the opinions of the state agency physicians, and Dunn's recovery from his angioplasty and improvement in his condition. The ALJ accepted the opinions of the state agency physicians, and gave the opinion of Dr. O'Brien partial weight, finding his comments about Dunn's need to lie down each day and expected absences to be unsupported by the record. R. 15.

Having reviewed the record as a whole, I find substantial evidence to support the ALJ's decision to give Dr. O'Brien's opinion partial weight. Dunn's records demonstrate that his physical condition improved following the angioplasty and stent placement in February 2010. Indeed, Dr. O'Brien's treatment notes show that Dunn reported improvement in his lower extremities with no claudication or discomfort upon walking or with exertion. R. 315, 324, 330, 384, 436. Although Dunn complained of neuropathic pain in his left leg post-surgery (R. 347, 351, 388, 392, 440, 444, 487, 491), a neurological examination was "fairly normal" with no focal deficits (R. 497–98). Dunn denied fatigue at several visits, and Dr. O'Brien noted that he was "well developed, well nourished, in no

acute distress." R. 352, 357. Dr. O'Brien also specifically stated that Dunn's PAD was stable with no recurrent or lifestyle limiting claudication. R. 349, 359.

Given these records, there is substantial evidence to support the ALJ's conclusion to give Dr. O'Brien's opinion partial weight. The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion, or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996) (internal citations omitted).

### *Credibility*

Dunn also argues that the ALJ erred by failing to assign substantial credibility to his testimony that he suffers from physical limitations and is unable to engage in substantial activity. At the administrative hearing, Dunn testified that he spends the majority of the day on the couch, he can't stand very long, he has memory problems, and he suffers from pain in his back and hips. R. 27–32.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and his ability to work. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir.1996). Dunn's subjective allegations of disabling pain are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Dunn met his burden of proving that he suffers from an underlying impairment which is reasonably expected to produce his claimed symptoms. *Craig v. Chater*, 76 F.3d 585, 592–93 (4th Cir.1996). The ALJ then must evaluate the intensity and per-

sistence of the claimed symptoms and their effect upon Dunn's ability to work. *Id.* at 594–95.

In this case, the ALJ recognized that Dunn suffers from severe impairments that cause him to experience fatigue and pain. The issue is not whether Dunn has physical limitations, but whether those limitations are so severe as to be disabling. The ALJ found that Dunn's statements regarding his limitations are not entirely credible and are not supported by the medical records showing his post-angioplasty improvement, the physical findings made on examination, and the reports of the reviewing and treating physicians in the record. The ALJ included a detailed analysis of Dunn's treatment records in his opinion in support of this conclusion.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir.1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.) After a review of the record as a whole, I find that substantial evidence supports the ALJ's determination that Dunn's testimony regarding his disabling limitations is only partially credible, and that Dunn is capable of performing the limited range of light work set forth in the ALJ's opinion.

Dunn's treatment records do not reflect a debilitating condition, but rather a condition that was continuously improving after the angioplasty and stent placement. The record reflects that post-surgery, Dunn had no claudication and could walk greater distances. His neuropathic pain was alle-

viated with medication, and injections and exercise were prescribed for his shoulder pain. His neurologic examination was fairly normal with no focal deficits. Dunn's subjective assessments of his limitations at medical appointments also reflect improvement. He denied fatigue, and stated that his leg was "great," his claudication had improved, and he was walking more. R. 324, 347, 352, 357, 384, 388.

The record also reflects that during the relevant period, Dunn continued to smoke cigarettes and abuse alcohol, against his physicians' recommendations. In December 2009, Dunn had an episode of alcohol withdraw-induced seizures, after which he was continuously instructed to abstain from alcohol. R. 210–23. However, throughout the record, Dunn reported drinking six to nine beers, six times per week. R. 316, 320, 325, 331, 352, 357, 385, 389, 393, 397, 437, 441, 445, 466, 488, 492. Finally, the ALJ noted that Dunn had not worked for thirteen years prior to filing his application for benefits. R. 14.

Dunn asserts that the medical evidence of record "corroborates" his testimony, and that the ALJ improperly analyzed his pain complaints and credibility. Pl.'s Br. 11. Dunn's appeal essentially asks the court to re-analyze the facts and re-weigh the evidence; disregarding the substantial evidence standard of review that this court must apply to the ALJ's decision. Additionally, credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. *See, e.g., Chafin v. Shalala,* No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990) and *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964)); *Melvin v. Astrue,* 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D.Va. July 5, 2007) (citing *Hatcher v. Sec'y of Health &*

*Human Servs.,* 898 F.2d 21, 23 (4th Cir. 1989)). Here, the ALJ's credibility determination is supported by substantial evidence, and should not be disturbed. *See Johnson v. Barnhart,* 434 F.3d 650, 658–59 (4th Cir.2005) (per curiam) (citing *Craig,* 76 F.3d at 589).

### Additional Evidence

Dunn argues that the case should be remanded to the ALJ for consideration of additional records submitted to the Appeals Council which show that Dunn required a second angioplasty and stent placement twenty days after the ALJ's decision. On September 24, 2011, Dunn presented to the emergency room complaining of lower leg pain and painful, blue-colored toes. R. 564. He was diagnosed with PAD and intermittent claudication, and discharged in stable condition. R. 570. On September 27, 2011, Dunn underwent a second angioplasty and stent placement in his right common and iliac arteries. R. 553–61. Post-surgery, Dunn complained of numbness and intermittent pain, but was able to ambulate. Dunn was discharged with instructions to stop smoking, continue on medications, and follow up with Dr. O'Brien in four to six weeks. R. 558.

The Appeals Council considered these additional records and found that they did not provide a "reason to review the Administrative Law Judge's decision." R. 1. When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't of Health and Human Servs.,* 953 F.2d 93, 95–96 (4th Cir.1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

*Id.* The Appeals Council was not required to provide express, specific findings on the record regarding the additional evidence submitted by Dunn. As the Fourth Circuit clarified in *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir.2011), "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." In this case, the Appeals Council's consideration of the additional evidence submitted by Dunn and denial of review met its obligations under the agency's regulations.

When the Appeals Council denied Dunn's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Wilkins,* 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." *Davis v. Barnhart,* 392 F.Supp.2d 747, 751 (W.D.Va.2005) (citing *Smith v. Chater,* 99 F.3d 635, 638 (4th Cir.1996)). Thus, when faced with new evidence, a court must reconcile its duty under *Wilkins* to review the entire record, including the new evidence, to determine if there is a reasonable possibility that it would change the outcome, with its obligation under *Smith* to abstain from making credibility determinations and resolving factual conflicts. *Davis,* 392 F.Supp.2d at 751.

Courts in this district have achieved that balance by reviewing the record as a whole to determine if the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports. If the new evidence creates such a conflict, there is a reasonable possibility that it would change the outcome of the case, and the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If such conflicts are not present, the case can be decided on the existing record without a remand. *Id.* (citing *Bryant v. Barnhart,* No. 6:04cv000017, 2005 WL 1804423, *5 (W.D.Va. Jan. 21, 2005); *Smallwood v. Barnhart,* No. 7:03cv00749, slip op. at 2 (W.D.Va. Oct. 19, 2004); *Ridings v. Apfel,* 76 F.Supp.2d 707, 709 n. 6 (W.D.Va.1999); *Thomas v. Commissioner,* 24 Fed.Appx. 158, 162 (4th Cir. 2001) (unpublished opinion); *McConnell v. Colvin,* No. 2:02cv00005, 2013 WL 1197091, at *7 (W.D.Va. March 25, 2013)).

Here the additional treatment records are clearly new evidence. The records do not require remand, however, because they are not material, and do not relate to the relevant time period at issue.

Dunn argues that the new medical records reflect upon Dunn's physical condition prior to the ALJ's decision, and show that Dunn's February 2010 angioplasty and stent placement did not result in improvement, and that Dunn's PAD was not stable. Pl. Br. at 13. I disagree. The medical evidence before the ALJ demonstrates that Dunn had significant improvement after his first angioplasty and stent placement. The records show that during the relevant time period, Dunn's PAD was stable, with declining symptoms. The new records reflect deterioration of Dunn's PAD after the ALJ's decision. There is no indication in the new records that they relate to Dunn's physical condition twenty days earlier.

Further, no additional limitations or restrictions were placed on Dunn's functional capacity after the second angioplasty and stent placement in September 2011. The new records show that the second angioplasty and stent placement successfully cleared blockages in Dunn's lower extremi-

ties. R. 553–55. At discharge, Dunn was ambulating, could do activity as tolerated, and was advised to start a walking program. R. 555, 558. The new records do not present the type of contradictory evidence that creates a reasonable possibility of changing the outcome of the case. The new evidence demonstrates that Dunn's condition worsened shortly after the ALJ's decision. In situations where a claimant's health worsens after the ALJ's decision, either due to a progressive condition or a stable condition with a sudden decline, the proper recourse is to file a new application. Consequently, I find no reasonable probability that the new evidence would have changed the ALJ's decision in this case.

### Conclusion

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, I find that substantial evidence supports the ALJ's opinion. In recommending that the final decision of the Commissioner be affirmed, I do not suggest that Dunn is totally free from any distress. The objective medical record simply fails to document the existence of any physical and/or mental conditions which would reasonably be expected to result in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating Dunn's claim for benefits and in determining that his physical impairments would not prevent him from performing a range of light work. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, I conclude that the Commissioner's decision must be affirmed, the defendant's motion for summary judgment **GRANTED,** and Dunn's motion for summary judgment **DENIED.**

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

August 5, 2013

